FRICK, Appellant,

v.

UNIVERSITY HOSPITALS OF CLEVELAND, Appellee.

[Cite as *Frick v. Univ. Hosp. of Cleveland* (1999), 133 Ohio App.3d 224.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 73202.

Decided March 10, 1999.

*C. Douglas Lovett,* for appellant.

*Helen Forbes Fields, Dennis N. Loconti* and *Scott H. Schooler,* for appellee.

DYKE, Presiding Judge.

Plaintiff, Deborah H. Frick, appeals from the judgment of the trial court that awarded summary judgment to the defendant, University Hospitals of Cleveland. For the reasons set forth below, we affirm.

On June 5, 1996, plaintiff filed this action against University Hospitals of Cleveland ("hospital"), alleging that she was wrongfully discharged from her employment due to an illness-related absence. Plaintiff alleged that the termi-

nation was contrary to public policy because during the time of her absence, she was "in a contagious state, thereby posing a serious health risk * * * to the hospital's patients" and others. Plaintiff further alleged that the termination violated her rights under the Family and Medical Leave Act of 1993 ("FMLA"), Section 2601 *et seq.*, Title 29 U.S.Code.

The hospital denied liability and asserted numerous affirmative defenses, including that plaintiff had not exhausted administrative remedies provided to hospital employees. On June 23, 1997, the hospital moved for summary judgment. The hospital demonstrated that it has an attendance policy that states that an employee should not be absent from work three or more times within a four-month period. The hospital asserted that plaintiff was terminated due to a long-standing pattern of violating this policy, following a series of written warnings. In addition, the hospital demonstrated that at all relevant times, it had in effect a three-step grievance procedure for administratively responding to employee charges of unfair termination and other disciplinary actions. The plaintiff acknowledged receiving the "Handbook/Grievance/Employee Advisor at the time she was hired." It is undisputed that plaintiff failed to exhaust her administrative remedies before filing a complaint with the court. In opposition to the hospital's motion for summary judgment, plaintiff asserted that she did not personally agree to the terms of the grievance procedure and that the hospital's attendance policy is a "no-fault" policy, which contravenes the FMLA.

On August 19, 1997, the trial court granted the hospital's motion for summary judgment. Plaintiff appeals and advances three assignments of error for our review.

Plaintiff's assignments of error state:

"The lower court erred in granting defendant's summary judgment motion since there was no *contractual* obligation on the part of plaintiff to her employer's unilaterally established 'grievance' policy and, thus, the Supreme Court's decision in *Nemazee v. Mt. Sinai Medical Center* had no application in this case.

"The lower court erred in granting summary judgment since the record evidence demonstrated, if anything, that the hospital had terminated plaintiff as a result of her absence arising out of a 'serious health condition' which warranted protection by the federal FMLA.

"The lower court erred in granting summary judgment since the hospital's termination of its employee—whose work, among other things, involved direct patient contact—due to an absence occasioned by her contraction of a contagious disease violated Ohio Public Policy." (Emphasis *sic*.)

As the assignments of error share a common basis in law and fact, we shall consider them together. Within these assignments of error, plaintiff complains

that she was not required to exhaust the hospital's administrative remedies before filing suit. She also asserts that she raised a colorable claim that her rights under the FMLA were violated and that the trial court therefore erred in entering judgment for the hospital.

With regard to procedure, we note that summary judgment is a procedural device used to terminate litigation that must therefore be awarded with caution, resolving all doubts in favor of the party opposing the motion. *Osborne v. Lyles* (1992), 63 Ohio St.3d 326, 333, 587 N.E.2d 825, 831. In order for summary judgment to be properly rendered, it must be determined that:

"(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274. See, also, *State ex rel. Zimmerman v. Tompkins* (1996), 75 Ohio St.3d 447, 448, 663 N.E.2d 639, 640–641.

The burden of establishing that there are no genuine issues of material fact to be litigated is upon the party moving for summary judgment. *Turner v. Turner* (1993), 67 Ohio St.3d 337, 340, 617 N.E.2d 1123, 1126. If the moving party meets this burden, the nonmoving party must then produce evidence pursuant to Civ.R. 56 setting forth specific facts that show that there is a genuine triable issue. *State ex rel. Zimmerman v. Tompkins, supra*, at 449, 663 N.E.2d at 641–642.

■ Also with regard to procedural matters, we note that the failure to exhaust administrative remedies constitutes an affirmative defense to the complaint. *Johnson v. Wilkinson* (1992), 84 Ohio App.3d 509, 515, 617 N.E.2d 707, 711. The policies behind the exhaustion doctrine were explained in *Nemazee v. Mt. Sinai Med. Ctr.* (1990), 56 Ohio St.3d 109, 111, 564 N.E.2d 477, 480:

■ " '[E]xhaustion [of administrative remedies] is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review.' *Weinberger v. Salfi* (1975), 422 U.S. 749, 765 [95 S.Ct. 2457, 2467, 45 L.Ed.2d 522, 538–539]. The purpose of the doctrine ' * * * is to permit an administrative agency to apply its special expertise * * * and in developing a factual record without premature judicial intervention.' *Southern Ohio Coal Co. v. Donovan* (C.A.6, 1985), 774 F.2d 693, 702."

As explained by this court in *Salvation Army v. Blue Cross & Blue Shield of N. Ohio* (1993), 92 Ohio App.3d 571, 577, 636 N.E.2d 399, 402:

■ "The doctrine is a court-made rule of judicial economy that allows the agency to function efficiently and to afford it an opportunity to correct its own errors while benefitting the parties and the courts by virtue of the agency's experience and expertise. In this way, a record adequate for judicial review will be compiled."

Applying these policies, the *Nemazee* court held that a "physician in a private hospital whose employment and/or hospital privileges have been terminated must exhaust all internal administrative remedies prior to seeking judicial review." *Id.*, at syllabus.

■ Plaintiff maintains that *Nemazee v. Mt. Sinai* and the rule requiring exhaustion of administrative remedies are inapplicable to this matter because the grievance policy was unilaterally adopted without her specific approval and because she is not subject to an employment agreement. In short, she asserts that there is no "mutual assent" to participate in a grievance procedure. Plaintiff further claims that she was not required to exhaust her administrative remedies because the grievance procedure states that an employee "may file a grievance regarding a perceived violation of hospital or department policy or any matter * * * [including] discharge or suspension" and does not indicate that it is mandatory.

With regard to plaintiff's complaint that the grievance procedure was unilaterally adopted, the court in *Helle v. Landmark, Inc.* (1984), 15 Ohio App.3d 1, 12, 15 OBR 22, 33–34, 472 N.E.2d 765, 776–777, recognized that an employer may promulgate personnel policies and practices that will not be defeated for want of mutuality. The court observed that the mutuality of obligation doctrine requires only a *quid pro quo* or consideration. See, also, 1 Restatement of the Law 2d, Contracts (1981) 200, Section 79. The court stated:

"In the case of a unilateral contract, as here, the promisor's offer is accepted by the promisee's performance rather than by a return promise to perform. Consequently, when the promisee's performance is executed, enforceable obligations arise without more. Under this analysis, then, appellants' continued employment, as the bargained-for-consideration, rendered the contract to pay severance benefits enforceable, regardless of 'mutuality' or a lack thereof." *Id.*

Further, the rule requiring exhaustion of internal, administrative procedures by which to review challenges to termination has been applied even where the employee alleges that he is simply an at-will employee. See *Libecap v. Lutheran Social Serv. of Miami Valley* (Feb. 11, 1994), Montgomery App. No. 14153, unreported, 1994 WL 37462.

Moreover, in *Internatl. Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., Local Union 20 v. Toledo* (1988), 48 Ohio App.3d 11, 14–15, 548 N.E.2d 257, 260–262, the court held that a grievance that arises after the lapse of a collective bargaining agreement may still be arbitrable even though there is no longer a contract between the parties. Finally, the defense of failure to exhaust administrative remedies also applies in various land use and other contexts where the parties do not enter into a written agreement to submit to the administrative tribunal before bringing suit. See, *e.g., Jones v. Chagrin Falls* (1997), 77 Ohio St.3d 456, 462, 674 N.E.2d 1388, 1492–1493.

■ As to plaintiff's additional claim that the language setting forth her administrative remedies does not mandate their use, we note that the rule requiring exhaustion of administrative remedies applies where an administrative remedy is provided; the parties need not be explicitly obligated to use it. *Pappas & Assoc. Agency, Inc. v. State Auto. Mut. Ins. Co.* (Jan. 7, 1998), Summit App. No. 18458, unreported, 1998 WL 15605. With particular relevance to plaintiff's observation that the hospital's grievance procedure states that an employee "may file a grievance regarding a perceived violation of hospital or departmental policy or [other] matter," the *Pappas* court considered the question of whether an administrative scheme that provides that the complaining party "may" invoke it had to be exhausted prior to obtaining judicial relief. The court stated:

"Pappas contends that the word 'may' in the statute makes the provision 'optional, permissive, or discretionary.' See *Dorrian v. Scioto Conservancy District* (1971), 27 Ohio St.2d 102, 107 [56 O.O.2d 58, 60, 271 N.E.2d 834, 837]; *Neiman v. Donofrio* (1992), 86 Ohio App.3d 1, 3 [619 N.E.2d 1117, 1119]. Pappas' assertion is correct, but only to a limited extent. Pappas *may* file his request for review with the superintendent of insurance, *or*, Pappas *may* forgo taking any further action on the matter. Because of the doctrine of administrative exhaustion, Pappas *may not* by-pass administrative review and file his claim directly in the common pleas court. See, *e.g., Nemazee v. Mt. Sinai Medical Ctr.* (1990), 56 Ohio St.3d 109, 111 [564 N.E.2d 477, 479–480].

"* * *

"Pappas had an administrative remedy available pursuant to R.C. 3905.50, but did not utilize it before filing a lawsuit in the courts. Therefore, Pappas' claims are barred by the doctrine of failure to exhaust administrative remedies.

"Ohio courts have consistently upheld the doctrine when applied to similar provisions for administrative review. In another case involving breach of contract provisions, the Eighth District Court of Appeals found that the plaintiff's complaint fell squarely within the scope of the review of the Superintendent of

Insurance and that the claim 'was cognizable by the Ohio Department of Insurance alone as it is charged by Titles 17 and 39 of the Revised Code with regulating the insurance industry.' *The Salvation Army v. Blue Cross & Blue Shield of N. Ohio, supra,* at 578 [636 N.E.2d at 403]. The court found that the plaintiff was foreclosed from pursuing any action in the courts until it had first exhausted its administrative remedies. See *id.*

"In *Nemazee v. Mt. Sinai Medical Ctr.,* 56 Ohio St.3d at 113 [564 N.E.2d at 481], the administrative remedy provided that the complainant '*may* request review of the matter by a hearing committee.' (Emphasis added.) The Ohio Supreme Court dismissed the plaintiff's complaint for failure to exhaust administrative remedies:

" '[Plaintiff] must first avail himself of the administrative remedies referred to * * * prior to seeking judicial review. Our ruling is consistent with the purposes of the exhaustion doctrine, to wit: to afford the [defendant] the opportunity to correct its own errors; to provide a trial court with an adequate factual record upon which to make an informed decision * * *; and to promote judicial economy through the resolution of these disputes without the premature need for judicial intervention.' *Id.* at 114 [564 N.E.2d at 482]. See, also, *Gordon v. Green* (1996), 113 Ohio App.3d 729, 733 [682 N.E.2d 1, 3] (action dismissed due to plaintiffs' 'failure to exhaust available administrative remedies before filing their complaint for a declaratory judgment').

"These recent decisions are consistent with decades of case law which has compelled exhaustion of administrative remedies even when the statute providing the remedy stated that the aggrieved party 'may' pursue that remedy. See, *e.g., Danis Clark Landfill Co. v. Clark Cty. Solid Waste Mgt. Dist.* (1995), 73 Ohio St.3d 590, 599–600 [653 N.E.2d 646, 653–655] ('*may* file'); *Bashore v. Brown* (1923), 108 Ohio St. 18, 22 [140 N.E. 489, 490] ('owner *may* file his objections in writing with the county commissioners')." (Emphasis *sic.*) Accord *Gibbons–Grable Co. v. Gilbane Bldg. Co.* (1986), 34 Ohio App.3d 170, 175, 517 N.E.2d 559, 563–564 (Reservation of remedies clause does not make arbitration requirement optional).

■ We further conclude that exhaustion of administrative remedies is required where the plaintiff asserts a claim of wrongful termination in violation of public policy. For as the Supreme Court noted in *Nemazee v. Mt. Sinai Med. Ctr., supra,* "one cannot circumvent the internal review of the hospital simply by adding" a new claim for relief. Indeed, the policy favoring internal review procedures would be defeated if a plaintiff could avoid the procedure simply by including additional causes of action that arise out of substantially the same set of circumstances. *Quamme v. Lancaster–Fairfield Community Hosp.* (Feb. 27, 1995), Fairfield App. No. 94–CA–33, unreported, 1995 WL 156276. Cf. *Provens v.*

*Stark Cty. Bd. of Mental Retardation & Developmental Disabilities* (1992), 64 Ohio St.3d 252, 257, 594 N.E.2d 959, 963 (noting with approval a decision from the Supreme Court of Alaska that refused to recognize an independent tort for violation of public policy as alleged by a public employee where the employee had available a comprehensive scheme of administrative remedies).

 Finally, with regard to plaintiff's claim of wrongful termination in violation of the FMLA, it is clear that such claim is cognizable in state court, see Section 2617(a)(2), Title 29, U.S.Code; cf. *McConaughy v. The Boswell Oil Co.* (1998), 126 Ohio App.3d 820, 711 N.E.2d 719. Although plaintiff maintains that federal courts hearing FMLA cases do not require exhaustion of administrative remedies, we are not necessarily convinced that this is so. See *Mann v. Haigh* (C.A.4, 1997), 120 F.3d 34, 36 (affirming matter wherein the magistrate determined that plaintiff asserting FMLA claim had not exhausted administrative remedies). In any event, "[n]o one disputes the general and unassailable proposition * * * that States may establish the rules of procedure governing litigation in their own courts." *Felder v. Casey* (1988), 487 U.S. 131, 138, 108 S.Ct. 2302, 2306, 101 L.Ed.2d 123, 137. Accord *St. Louis Southwestern Ry. Co. v. Dickerson* (1985), 470 U.S. 409, 411, 105 S.Ct. 1347, 1348, 84 L.Ed.2d 303, 306 ("[a]s a general matter, FELA cases adjudicated in state courts are subject to state procedural rules, but the substantive law governing them is federal"). As noted previously, the failure to exhaust administrative remedies is an affirmative defense and is therefore a procedural matter. See 1 Baldwin's Ohio Civil Practice (1988) 35, Section 13.03. We therefore conclude that plaintiff was required to exhaust her administrative remedies before commencing her FMLA claim.

In accordance with the foregoing, we note that the undisputed facts of the record demonstrate that the hospital promulgated a three-step grievance procedure for hearing employee disputes of various matters including termination. It is also undisputed that plaintiff did not invoke the administrative remedies in order to challenge her termination. Accordingly, the trial court properly awarded the hospital judgment as a matter of law and the assigned errors are without merit.

*Judgment affirmed.*

TIMOTHY E. MCMONAGLE, J., concurs.

KARPINSKI, J., dissents.

KARPINSKI, J., dissenting.

I respectfully dissent. The record shows that defendant failed to demonstrate plaintiff's Ohio public policy and federal statutory claims are barred by its workplace grievance procedure. The majority's summary opinion to the contrary is ill-considered and untenable.

Plaintiff's nineteen-year employment was terminated by University Hospitals of Cleveland after her three-day absence due to illness for conjunctivitis and bronchitis. Her physician, Steven Rudolph, M.D., Ph.D., of University Suburban Health Center, advised her not to return to work at University Hospitals because her condition was contagious.[1] Rudolph informed her employer of her illness on the first day of absence.

When plaintiff returned, she had a meeting with her supervisors and provided them with a written back-to-work form completed by Rudolph. Nevertheless, she was discharged for violating University Hospital's "no fault" attendance policy by accumulating three absences in a four-month period. She filed suit, alleging that her discharge, following an absence from her job at the hospital while under doctor's orders because of her contagious condition, violated Ohio public policy and the federal Family and Medical Leave Act, Section 2601 *et seq.*, Title 29, U.S.Code.

The majority holds that her legal claims are barred by a grievance procedure, of which she had no notice of the terms, because she did not submit a "grievance statement form" to her supervisor after submitting her doctor's return-to-work form. Rudolph's phone call and written return-to-work form provided to defendant before plaintiff's firing demonstrated her grounds for medical leave and were the only medical evidence of record.

Summary judgment is warranted only when, after viewing the evidence in the light most favorable to the nonmoving party, there is no genuine issue of material fact, reasonable minds can come to one conclusion, and the movant is entitled to judgment as a matter of law. To satisfy this burden, the party seeking summary judgment must identify the part of the record that demonstrates the absence of a genuine issue of fact on the nonmovant's claim. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 283, 662 N.E.2d 264, 266–267. All doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358–359, 604 N.E.2d 138, 139–140.

Defendant's motion for summary judgment argued that its current revised grievance procedure required plaintiff to raise all her claims in defendant's forum

---

1. A prescription form completed by him and submitted by defendant stated, "[B]ecause of her condition I instructed her to stay home for 2 days + then return to work based on her condition. I left it to her judgment as to whether to return to work on the third day."

and, because she failed to do so, barred her action in court. Defendant attached to its motion a partial copy of the revised grievance procedure, but did not present any evidence that the revised procedure was disseminated to plaintiff at any time before she was fired.

In opposition to summary judgment, plaintiff submitted an affidavit that she never received the revised employee handbook or was aware of the terms of the grievance procedure until the document was filed for the first time with defendant's motion for summary judgment. It is not clear how an employee can be expected to comply with requirements, upon pain of forfeiture, of which it had no notice. The majority overlooks this evidence, which it is required by law to view in the light most favorable to plaintiff.

Instead, the majority simply asserts that, in cases of unilateral contracts, the employer's offer (that is, the revised grievance procedure) is accepted by the employee's performance (that is, by her continuing to work). This argument ignores, however, that an employer's offer must first be communicated to the employee before it can be deemed to be accepted. Implying a contract by an employee's performance, when there is no evidence that the terms were communicated to the employee before performance, takes legal fiction to new heights.

In writing, plaintiff acknowledged receipt of many other documents, but defendant produced no such document concerning the revised grievance procedure. There is, moreover, no evidence that defendant mentioned its grievance procedure in any oral or written counseling sessions with plaintiff.

Plaintiff was aware only of a lady who handles grievances. Such generalized awareness of a grievance process would not give notice (1) that the procedure had been revised, (2) that repeated use of the permissive term "may" in the procedure would be construed to mean that it was mandatory and exclusive, (3) that a grievance had to be made in writing on a particular form, (4) that it had to be filed within only "five (5)" days, and (5) that the employer's decision on the grievance would be "final and binding."

Contrary to the majority opinion, it is not clear, moreover, that the grievance procedure applies in this case, even if plaintiff had received notice of its terms. Under the literal terms of the Employee Grievance Procedure,[2] plaintiff's claims asserted in the case at bar do not constitute a "grievance" or "eligible grievance" subject to the procedure. Section II.A. defines "grievance" as follows:

---

2. The first page of this section of the handbook states as follows: "Revised: 1/76, 12/92 Effective Date: 7/1/93"

"A. Grievance—A complaint by an employee based upon the belief that he/she has been treated in a manner which is not in accordance with hospital or departmental policy. * * * "

Subsection K defines the term "eligible grievance" as follows:

"K. Eligible Grievance—An employee may file a grievance regarding a perceived violation of hospital or departmental policy or any matter which has resulted in the issuance of an official Corrective Action. * * * *Corrective Action for attendance issues will not be considered eligible when the department has applied hospital policy consistently. * * * *"* (Emphasis added.)

Plaintiff's claims did not fall within the scope of either of these provisions. She did not complain that defendant failed to follow hospital or departmental policy or that hospital policy was not consistently applied. Rather, she alleged that defendant's attendance policy, and termination of her employment when she was absent from work on a doctor's orders because of a contagious condition, violated Ohio public policy and federal law.

Finally, even if the revised grievance procedure applies as the majority contends, I would find that it does not preclude the filing in a court of law of Ohio public policy and federal statutory claims. It is profoundly unwise to permit private employers, who are parties with an interest in a dispute and who have no recognized competence, to make "final and binding" pronouncements on questions of law, especially under a mandatory and exclusive scheme. Because the majority fails to adequately address these issues, I respectfully dissent.