JOURNAL ENTRY AND OPINION
{¶ 1} R.C. Chapter 4112 permits individuals to seek private remedies in the event they suffer adverse job action as a result of discrimination. The issue in this appeal is whether a separated civil service employee who has administrative remedies available to him by way of a civil service appeal is required to exhaust those remedies as a predicate to filing a private disability discrimination action under R.C. Chapter 4112.99.
 I {¶ 2} Although there is a significant amount of evidentiary material in the record, the question on appeal concerns an interpretation of the law, not an application of the facts to that law. Hence, except as otherwise noted, we consider the facts to be undisputed for purposes of Civ. R. 56, and review the court's summary judgment for an error of law. In doing so, we list only those facts which are germane to the issue on appeal.
 {¶ 3} Defendant city of Euclid employed plaintiff Michael Dworning as a fireman for about 30 years. At the time of his separation, he served as chief of the fire department. On March 4, 2004, the mayor informed the civil service commission ("commission") that "Fire Chief Michael Dworning was terminated from his position with the City of Euclid effective February 20, 2004." In a letter dated March 9, 2004, the mayor again wrote the commission, this time informing it that "Euclid Fire Chief Michael Dworning submitted his retirement notice to my office on March 8, 2004 and is effective as of February 20, 2004." The exact nature of Dworning's separation is contested. The second letter apparently memorialized an arrangement whereby the city agreed to characterize Dworning's separation as an early retirement, as opposed to termination, in order to give him a payout of sick time benefits that would not be available to him were he in fact terminated.
 {¶ 4} Dworning took no administrative action with the commission to contest his separation. Nor for that matter did the city inform Dworning of his right to appeal his separation to the commission. Instead, Dworning filed this action, alleging that he had been discharged because of a disability — alcoholism — in violation of R.C. Chapter 4112.02. In addition to his discrimination claims, he set forth conspiracy claims against certain members of the department, defamation, invasion of privacy, and breach of contract claims. He sought economic and non-economic damages, back wages, benefits, and any other equitable relief the court might grant.
 {¶ 5} The city filed a motion for summary judgment in which it argued that Dworning's failure to file an appeal with the commission constituted a failure to exhaust administrative remedies. Dworning opposed the motion, arguing that his right to seek a judicial remedy for discrimination under R.C. Chapter 4112 was not contingent upon him first exhausting what administrative remedies he might have. He maintained that the state has a liberal policy of private enforcement of discrimination laws that would be incompatible with a requirement to exhaust administrative remedies.
 {¶ 6} The court granted summary judgment without opinion, merely stating that the city's motion for summary judgment "for failure to exhaust administrative remedies * * * is granted."
 {¶ 7} The issue framed above is apparently one of some importance. A number of amici curiae have joined in briefs filed with this court, urging affirmation or reversal consistent with their respective interests. Those interests can be broadly stated as supporting: (1) a private litigant's right to initiate a lawsuit under the broadly interpreted remedial statutes of R.C. Chapter 4112, regardless of any administrative remedies available to that person or (2) a municipality's desire to compel the use of administrative remedies as a means of promoting the internal resolution of disputes and promoting judicial economy.
 {¶ 8} These positions require us to consider the law relating to handicap discrimination and exhaustion of administrative remedies.
 II {¶ 9} We first address Dworning's arguments relating to his private right to seek redress of illegal discrimination in the courts.
 A {¶ 10} R.C. 4112.02(A) states:
 {¶ 11} "It shall be an unlawful discriminatory practice:
 {¶ 12} "(A) For any employer, because of the race, color, religion, sex, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."
 {¶ 13} A "disability" is defined in R.C. 4112.01(A)(13) as "a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a record of a physical or mental impairment; or being regarded as having a physical or mental impairment."
 {¶ 14} Alcoholism is considered a disability for purposes of R.C. 4112.02(A). See Hazlett v. Martin Chevrolet, Inc. (1986),25 Ohio St.3d 279, syllabus.
 B {¶ 15} Under either federal or state law, an aggrieved party has the right to file an action to redress a claim of discrimination. A discrimination claim can be filed with either the state administrative agency, the Ohio Civil Rights Commission (OCRC) or the federal Equal Employment Opportunity Commission (EEOC). Although Ohio discrimination laws closely track federal laws, there are significant differences in how the separate agencies process claims. For our purposes here, it is important to understand that under federal law, a party must first file a claim with the EEOC before it can pursue a private action against an employer. Even then, the right to file a private action under federal law is conditioned upon the EEOC issuing a right to sue letter.
 {¶ 16} Ohio, on the other hand, does not require a filing with the OCRC as a prerequisite for pursuing a discrimination claim directly in court. Individual claims for employment discrimination are authorized by R.C. 4112.99, which provides for a private right of action, stating that "whoever violates [R.C. Chapter 4112] is subject to a civil action for damages * * *." In Helmick v. Cincinnati Word Processing, Inc. (1989),45 Ohio St.3d 131, 133, the Ohio Supreme Court stated:
 {¶ 17} "On the first point there appears to be little question that R.C. Chapter 4112 is comprehensive legislation designed to provide a wide variety of remedies for employment discrimination in its various forms. Appellees agree that claims for employment discrimination must be asserted under the aegis of R.C. Chapter 4112."
 {¶ 18} In Elek v. Huntington Natl. Bank (1991), 60 Ohio St.3d 135,137, the supreme court found that "R.C. 4112.99 is to be liberally construed to promote its object (elimination of discrimination) and protect those to whom it is addressed (victims of discrimination). * * * As such, R.C. 4112.99 must be interpreted to afford victims of handicap discrimination the right to pursue a civil action."
 {¶ 19} It requires no citation to authority to say that the elimination of workplace discrimination is a beneficial goal.
 III {¶ 20} We next consider the doctrine of exhaustion of administrative remedies.
 A {¶ 21} In McKart v. United States (1969), 395 U.S. 185, 193-194, the United States Supreme Court explained the purpose behind exhaustion of administrative remedies:
 {¶ 22} "The doctrine of exhaustion of administrative remedies is well established in the jurisprudence of administrative law. The doctrine provides `that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.' The doctrine is applied in a number of different situations and is, like most judicial doctrines, subject to numerous exceptions. Application of the doctrine to specific cases requires an understanding of its purposes and of the particular administrative scheme involved.
 {¶ 23} "Perhaps the most common application of the exhaustion doctrine is in cases where the relevant statute provides that certain administrative procedures shall be exclusive. The reasons for making such procedures exclusive, and for the judicial application of the exhaustion doctrine in cases where the statutory requirement of exclusivity is not so explicit, are not difficult to understand. A primary purpose is, of course, the avoidance of premature interruption of the administrative process. The agency, like a trial court, is created for the purpose of applying a statute in the first instance. Accordingly, it is normally desirable to let the agency develop the necessary factual background upon which decisions should be based. And since agency decisions are frequently of a discretionary nature or frequently require expertise, the agency should be given the first chance to exercise that discretion or to apply that expertise. And of course it is generally more efficient for the administrative process to go forward without interruption than it is to permit the parties to seek aid from the courts at various intermediate stages. The very same reasons lie behind judicial rules sharply limiting interlocutory appeals.
 {¶ 24} "Closely related to the above reasons is a notion peculiar to administrative law. The administrative agency is created as a separate entity and invested with certain powers and duties. The courts ordinarily should not interfere with an agency until it has completed its action, or else has clearly exceeded its jurisdiction. As Professor Jaffe puts it, `the exhaustion doctrine is, therefore, an expression of executive and administrative autonomy.' This reason is particularly pertinent where the function of the agency and the particular decision sought to be reviewed involve exercise of discretionary powers granted the agency by Congress, or require application of special expertise." (Citations and footnote omitted.)
 {¶ 25} Ohio law recognizes the importance of exhaustion of administrative remedies. While the failure to exhaust administrative remedies is not a jurisdictional defect, it may constitute an affirmative defense if timely asserted and maintained. See Jones v.Chagrin Falls (1997), 77 Ohio St.3d 456, syllabus.
 B {¶ 26} The city is a home rule municipality with a duly adopted city charter. Article IV, Section D of the city charter grants the mayor the power to "* * * remove any officer or employee of the City, but such power shall be subject to the other provisions of this Charter * * *." The charter also establishes a civil service commission ("the commission"). Article V, Section 7 of the charter provides that the commission shall "provide by rule for the ascertainment of merit and fitness as the basis for appointment and promotion in the service of the City, * * * and for appeals from the action of the Mayor in any case of transfer, reduction, or removal."
 {¶ 27} The commission operates under local rules. Rule 8.2 states that "no person in the classified service shall be discharged or reduced in rank or compensation without being notified, in writing, by the Appointing Authority or officer of the reasons of such discharge or reduction." Rule 8.3 states that "any employee or officer or holder of a position in the classified service may request a hearing before the Appointing Authority to appeal the notice of any suspension, discharge or reduction in rank or compensation." Section (A) of Rule 8.3 requires a request for appeal to be made within 10 days of the suspension, discharge or reduction in rank or compensation.
 {¶ 28} It is undisputed that Dworning did not appeal his separation to the commission.
 IV {¶ 29} We come then to the issue in this appeal — was Dworning barred from filing a private action under R.C. Chapter 4112 when he did not appeal his separation to the commission?
 A {¶ 30} Dworning challenges the mandatory aspect of the civil service appeal provided to him. He notes that Rule 8.3 states that "any employee or officer or holder of a position in the classified servicemay request a hearing before the Appointing Authority to appeal the notice of any suspension, discharge or reduction in rank or compensation." (Emphasis added.) He argues that the use of the permissive word "may" did not require mandatory resort to the administrative appeal provided by the city, therefore negating any exhaustion requirement.
 {¶ 31} It has long been the rule that "[i]n statutory construction, the word `may' shall be construed as permissive and the word `shall' shall be construed as mandatory unless there appears a clear and unequivocal legislative intent that they receive a construction other than their ordinary usage." Dorrian v. Scioto Conservancy Dist. (1971),27 Ohio St.2d 102, paragraph one of the syllabus.
 {¶ 32} But in ways that only the law can accomplish, there are times when "the word, `may,' must be construed to mean `shall,' and `shall' must be construed to mean `may,' in such cases the intention that they shall be so construed must clearly appear." Dennison v. Dennison (1956),165 Ohio St. 146, 149.
 {¶ 33} This does not mean that "up" is "down." It does mean that we give words their ordinary meaning, particularly when they are terms of art, except in cases where it would be absurd to do otherwise. Hence, when the context conclusively shows that something is mandatory, the use of the word "may" will not necessarily dictate a conclusion that a thing is permissive.
 {¶ 34} With this in mind, the city argues that its appeals process was mandatory, despite the use of the word "may." It cites to Portis v.Metro Parks Serving Summit Cty., Summit App. No. 22310, 2005-Ohio-1920, where the Ninth District Court of Appeals held under virtually identical facts that the use of the word "may" in an administrative appeal process was mandatory in nature. Id. at ¶ 19. The court of appeals cited toNemazee v. Mt. Sinai Med. Ctr. (1990), 56 Ohio St.3d 109, in which the supreme court held that "a physician in a private hospital whose employment and/or hospital privileges have been terminated must exhaust all internal administrative remedies prior to seeking judicial review." Id. at syllabus. The court of appeals noted that:
 {¶ 35} "The Ohio Supreme Court in Nemazee was also presented with a `may' clause. It found that the plaintiff-appellant was required to first pursue his administrative remedies. Nemazee, 56 Ohio St.3d at 114. The Nemazee Court followed a history of the Ohio Supreme Court compelling exhaustion of administrative remedies even when the statute providing the remedy stated that the aggrieved party `may' pursue that remedy." Id. at ¶ 17.
 {¶ 36} While Nemazee indeed concerned an internal appeals process that used the permissive word "may," there is no discussion of that word as a basis for ordering Nemazee to first exhaust his administrative remedies as a predicate for filing a complaint. Absent an explicit discussion of this point by the supreme court, we think it improvident to ascribe to the opinion an express finding that the permissive word "may" must be interpreted as being the mandatory "shall."
 B {¶ 37} But all of this may be of no moment. Just one year after issuing Nemazee, the supreme court issued Elek v. Huntington Natl.Bank. In Elek, the supreme court found that "R.C. 4112.99 is to be liberally construed to promote its object (elimination of discrimination) and protect those to whom it is addressed (victims of discrimination). * * * As such, R.C. 4112.99 must be interpreted to afford victims of handicap discrimination the right to pursue a civil action."
 {¶ 38} The supreme court reaffirmed these principles in Smith v.Friendship Village, 92 Ohio St.3d 503, 506, 2001-Ohio-1272:
 {¶ 39} "In Elek, we held that, under R.C. 4112.99, an individual may institute an independent civil action for discrimination on the basis of a physical handicap even though that individual has not invoked and exhausted his or her administrative remedies. However, because the plaintiff in Elek had not instituted administrative proceedings prior to filing his civil action, our holding in that case does not quite answer whether the General Assembly intended that handicapped persons be barred from instituting a judicial action after electing to commence administrative proceedings."
 {¶ 40} The court went on to state:
 {¶ 41} "R.C. 4112.02(N) provides that `an aggrieved individual may enforce the individual's rights relative to discrimination on the basis of age * * * by instituting a civil action.' An individual may also file an age discrimination charge with the commission pursuant to R.C. 4112.05(B)(1). However, the General Assembly has specifically provided that individuals alleging age discrimination must choose between an administrative or judicial action. R.C. 4112.08 states that `any person filing a charge under division (B)(1) of section 4112.05 of the Revised Code, with respect to the unlawful discriminatory practices complained of, is barred from instituting a civil action under section 4112.14 or division (N) of section 4112.02 of the Revised Code.'
 {¶ 42} "These provisions relating to age discrimination demonstrate that the General Assembly was aware that individuals might attempt to commence both administrative and judicial proceedings pursuant to R.C. Chapter 4112. So, in clear language, the General Assembly expressed its intent that an election must be made. However, in regard to handicapdiscrimination claims, the General Assembly has not manifested a similarintent requiring a plaintiff to elect between an administrative orjudicial remedy. Thus, had the General Assembly intended that individuals alleging handicap discrimination be forced to choose between an administrative or civil proceeding, it would have specifically stated so, as it did with respect to age discrimination. In this respect, we are guided by the Latin maxim expressio unius est exclusioalterius, which translated means that the expression of one item of a class implicitly excludes other items of the class that are not specifically mentioned. State v. Droste (1998), 83 Ohio St.3d 36, 39,697 N.E.2d 620, 622. The General Assembly has specifically limited an individual's ability to bring both an administrative and civil proceeding in the context of age discrimination only. Its exclusion of other forms of discrimination from this limitation makes clear that it intended that both remedies be available for other forms of discrimination." Id. at 506-507 (emphasis added).
 {¶ 43} Accordingly, the court held that "[t]he filing of an unlawful discriminatory practice charge with the Ohio Civil Rights Commission under R.C. 4112.05(B)(1) does not preclude a person alleging handicap discrimination from instituting an independent civil action under R.C. 4112.99." Id. at syllabus.
 {¶ 44} Consistent with these holdings, the supreme court has refused to apply the exhaustion of administrative remedies doctrine when there is a "judicial remedy that is intended to be separate from the administrative remedy * * *." See Basic Distribution Corp. v. Ohio Dept.of Taxation, 94 Ohio St.3d 287, 290, 2002-Ohio-794, citing Larkins v.G.D. Searle Co. (1991), 68 Ohio App.3d 746, 589 N.E.2d 488.
 {¶ 45} The preceding authorities leave us no doubt that an individual's private right of action under R.C. 4112.99 is a judicial remedy separate from an administrative remedy offered by a civil service commission. The statutes imply — and the supreme court's most recent cases compel — this conclusion. With all due respect, Portis failed to mention any of the supreme court's holdings subsequent toNemazee. Moreover, it failed to take into account the remedial nature of R.C. Chapter 4112 claims, and the General Assembly's intent to create a private right of action. Instead, it engaged in a one-sided analysis of the exhaustion doctrine, without a word on the policy underlying a private right of action under R.C. 4112.99. Given this lack of discussion by the court of appeals, we do not consider Portis to be persuasive authority and will not apply it to find that the use of the word "may" in the city's civil service appeals process is mandatory.
 {¶ 46} We likewise distinguish Frick v. University Hosp. ofCleveland (1999), 133 Ohio App.3d 224. In Frick, a divided panel of this court held that a hospital employee making a claim under the Family Medical Leave Act had to first exhaust administrative remedies through her employer's three-step grievance procedure. Again, although the panel strongly endorsed exhaustion of administrative remedies as a prerequisite to the filing of a discrimination claim, it too failed to mention Elek and other cases which reaffirmed the remedial nature of the private right of action under R.C. Chapter 4112.
 {¶ 47} We also believe it is significant that none of the adverse opinions cited above make mention of the interplay between the applicable administrative remedies and R.C. 4112.08. That section specifically states that "[t]his chapter shall be construed liberally for the accomplishment of its purposes, and any law inconsistent withany provision of this chapter shall not apply." (Emphasis added.) The city's civil service rules have the force of law . State ex rel.Celebrezze v. Natl. Lime Stone Co. (1994), 68 Ohio St.3d 377, 382. Applying the exhaustion doctrine to those rules has the undeniable effect of limiting, and in some circumstances superseding, the private right of action under R.C. 4112.99. Hence, application of the exhaustion doctrine would be inconsistent with the remedial purposes of R.C. Chapter 4112.
 C {¶ 48} The city argues that neither Elek nor Smith addressed the issue of exhaustion of "internal" administrative remedies of the kind provided by the city. It maintains that those cases recognize that an independent cause of action exists under R.C. 4112.99 separate from the statutory protections afforded by the Ohio Civil Rights Commission in R.C. 4112.05
— in other words, an administrative review system based wholly on the remedial scheme intrinsic to R.C. Chapter 4112.
 {¶ 49} We fail to see how this argument advances the city's position. First, there is nothing in the text of R.C. 4112.02 to suggest that the General Assembly meant to treat employees subject to civil service commission rules (or any other disciplinary procedure) differently than non-civil service employees. R.C. 4112.01(A)(2) includes within the definition of "employer" "any political subdivision of the state." An "employee" is defined as "an individual employed by any employer * * *." It makes no distinction between public and private employers or their employees. Yet the city's argument would create a distinction based on nothing more than exempt or non-exempt status under the civil service.
 {¶ 50} Second, the differentiation of employees based on nothing more than civil service status could create scenarios which end up frustrating the right to exercise a statutory remedy. Suppose that a civil service appeal is considered a predicate to filing a discrimination claim. It is conceivable that a civil service appeal (and subsequent court review of a civil service appeal) might take more than six months to be resolved. This time period would extend beyond the limitations period set forth for filing a claim of discrimination with the Ohio Civil Rights Commission. R.C.4112.05(B)(1). If this scenario plays out, it would have the practical effect of elevating by priority the administrative remedy above the remedy expressly provided by statute. That would be a clear violation of R.C. 4112.08. In fact, the city's position could have the ultimate effect of undermining a person's right to file a charge of discrimination with the civil rights commission.
 {¶ 51} Third, the "internal" administrative remedies provided by the commission are nowhere near as expansive as those available to a litigant filing a discrimination action. R.C. 4112.99 authorizes Dworning to seek "damages, injunctive relief, or any other appropriate relief." The civil service appeal process, on the other hand, is silent on Dworning's remedies. Rule 8.4(B) of the commission states that the commission, "upon hearing testimony may affirm or disaffirm or modify the decision or judgment of the Appointing Authority." The rules make no provision for money damages. Additionally, the commission is not quasi-judicial, and therefore lacks the ability to enter an injunction or any other equitable relief that is available under R.C. 4112.99.
 {¶ 52} The city's position in essence argues that we should prefer an exhaustion of the very limited remedies available in a civil service appeal over the significantly more expansive rights provided under R.C. 4112.99. This position is inconsistent with the spirit of Elek, where the supreme court held that a party did not have to exhaust the more expansive civil rights commission review before initiating a private action. If the right to private action is so remedial as to trump the very well-established statutory process created through the civil rights commission, that private remedy will certainly trump a civil service appeal with significantly more limited remedies.
 {¶ 53} Our view is consistent with Nemazee. To be sure,Nemazee ordered a litigant to exhaust "internal" administrative remedies provided by his employer. But Nemazee did not file a disability discrimination claim subject to private action under R.C. 4112.99. He filed a breach of contract and intentional infliction of emotional distress claim. Nemazee, 56 Ohio St.3d at 110. Making a special note of its reluctance to involve itself in the staffing decisions of a hospital, the supreme court reached the unremarkable conclusion that Nemazee's contract complaint was best resolved with resort to the hospital's grievance procedure, which itself was listed in Nemazee's employment contract. Id.
 {¶ 54} Here, the applicability of the civil service appeals process is not contractual in nature. We have been provided no evidence to show that there were contractual terms and conditions of Dworning's employment. Dworning was employed under civil service rules. Of course, he was subject to work rules, but these work rules are unlike the employment contract in Nemazee. Similarly, Dworning was not subject to a collective bargaining agreement which would have defined the exclusive rights and liabilities of the parties. Absent such contractual obligations, we cannot interpret Nemazee in the expansive way suggested by the city.
 D {¶ 55} We have been provided no reason to think that a civil service appeal in this case would promote judicial efficiency in a manner consistent with the exhaustion doctrine's goal to preserve judicial resources.
 {¶ 56} The holding in Elek — that a party who has first initiated proceedings with the civil rights commission has no obligation to exhaust that remedy before seeking private redress of discrimination claims — compels the conclusion that a municipality's civil service commission should not be treated any differently. It would make no sense to say that the civil rights commission, with its established expertise in dealing with discrimination cases, is a less viable place to initiate a claim of discrimination than a municipal civil service commission which has no authority to redress a claim of discriminaton beyond reinstatement. In fact, the opposite conclusion holds. There is no doubt that Dworning could have initiated a claim with the civil rights commission before filing a claim with the civil service commission. If the filing of a civil service appeal is not a prerequisite for filing a claim with the civil rights commission, and a party need not exhaust a civil rights commission claim before filing a private action, the city cannot rationally argue that a party must first file a civil service appeal before filing a private discrimination action.
 {¶ 57} We likewise fail to see how the purposes of judicial economy are served by requiring a party to exhaust administrative remedies with a civil service commission before filing a private discrimination action. The civil service commission's own rules severely limit its review of employment decisions. As we previously noted, the city civil service commission may simply affirm, disaffirm or modify the "appointing authority's" decision. This mandate does not encompass the relief sought by Dworning in his discrimination action. In City ofWhitehall ex rel. Wolfe v. Ohio Civil Rights Comm., 74 Ohio St.3d 120,122, 1995-Ohio-302, the supreme court stated, "* * * the issues involved in a civil service appeal before either the State Personnel Board of Review or a municipal civil service commission and an unlawful discriminatory practice charge before OCRC are different." As we read its rules, the city civil service commission could only order reinstatement of employment — something Dworning has not requested. And even if it did have authority to determine whether the city had discriminated against Dworning, the civil service commission does not appear to have the authority to order money damages as a remedy. This is opposed to the private right of action which specifically permits money damages and other injunctive relief. In other words, Dworning's civil service remedy would be no remedy at all. This is the antithesis of conservation of judicial resources.
 E {¶ 58} To summarize thus far: the remedial nature of R.C. 4112.99
trumps the availability of an administrative appeal which cannot consider a disability discrimination claim or provide relief in a manner consistent with the purposes of the exhaustion doctrine. This conclusion is compelled by the nature of the claims involved: one being a statutory right; the other being a judge-made rule of convenience. While we continue to believe in the efficacy of the exhaustion doctrine, the convenience of the courts cannot overcome a right so remedial in purpose as expressed by the General Assembly and a long line of court decisions. We stress that our holding does not apply to employment relationships defined by contract, whether private or by way of a collective bargaining agreement, which set forth agreed upon disciplinary procedures, regardless of whether the right to invoke those procedures is couched in discretionary language. However, unless and until the General Assembly expressly incorporates an exhaustion requirement into R.C. Chapter 4112, we have no basis for requiring it as a matter of course to those workers who have available civil service remedies.
 V {¶ 59} This brings us to the factually contested portion of this case — did Dworning retire or was he terminated?
 {¶ 60} The city maintains that it did not terminate Dworning — he retired. To support this argument, it offered into evidence a letter sent by Dworning dated March 8, 2004 in which he told the mayor, "* * * I have chosen to retire from my position as the Chief of the Euclid Fire Department."
 {¶ 61} Dworning does not deny that he sent the March 8, 2004 letter, but maintains he did so in order to receive certain retirement benefits that he would not be entitled to if he had been terminated. These claims were substantiated by the mayor, who said at deposition that he met with Dworning on February 20, 2004 and "I informed him that I was contemplating considering terminating his employment and that we discussed him voluntarily retiring." The mayor went on to say that "I thought the best way under the situation would be for retirement." Dworning exited the meeting by giving the mayor his badge. On February 24, 2004, the mayor wrote Dworning to request a "written statement that you have in fact resigned your position as Chief of the Euclid Fire Department * * *. A written statement is necessary in order to process your payment for accumulated vacation, sick and personal days, etc." On March 2, 2004, the mayor again wrote Dworning to say that he had not received Dworning's "written indication of resignation or retirement" and that "you are hereby terminated from your position with the City of Euclid for poor work performance. Your effective date of termination is February 20, 2004." This letter prompted Dworning's March 8, 2004 letter announcing his retirement. In response, the mayor wrote the civil service commission to inform it of Dworning's resignation effective retroactively to February 20, 2004. In a subsequent correspondence to members of the fire department, Dworning noted his separation in an email sent on February 24, 2004, saying that "I know in my heart, the Mayor did not have an easy task on [sic] making the decision that he did. Yet, please do not think for one minute that I am prepared to go away silently." The city did not ask Dworning to waive his rights in exchange for the early retirement and benefits payout.
 {¶ 62} The dispute over the voluntariness of Dworning's separation is counterintuitive. If, as the city argues, Dworning actually retired, the commission appeals process would be unavailable to him as it expressly applies only upon "suspension, discharge or reduction." No exhaustion of remedies would be required. See Vedder v. City of WarrensvilleHts., Cuyahoga App. No. 81005, 2002-Ohio-5567, at T|24. On the other hand, Dworning's insistence that he had been terminated is at odds with his acceptance of a payment for accumulated sick and leave time that he would not have been entitled to in the event of a termination.
 {¶ 63} There are reasons for these strange positions. If Dworning "retired," he would seriously weaken (perhaps even obviate) his claim that he had been discharged on account of his disability. So it is in the city's ultimate interest to say that Dworning "retired" even though this position nullifies the argument concerning the exhaustion of administrative remedies. At the same time, the absence of a constructive discharge claim for relief in Dworning's complaint is likely explained by his unwillingness to tender back the cash payment he received for his early retirement — we presume that if he had been discharged, the city could have counterclaimed for those benefits it granted Dworning.
 {¶ 64} The precise characterization of Dworning's separation as an issue of fact is of no moment for purposes of appeal. If we accept as a matter of fact that Dworning was terminated, our holding that he has no obligation to exhaust his administrative remedies is unaffected. Likewise, if we accept as a matter of fact that Dworning retired, we would find that the exhaustion doctrine would not apply because the city's civil service commission rules do not encompass voluntary separations. So regardless of how we characterize Dworning's separation, there is no requirement that he exhaust administrative remedies.
 V {¶ 65} In the end, we are left with choosing between a judge-made rule of convenience over a clearly defined statutory right. We continue to adhere to the fundamental principles supporting the exhaustion doctrine. In the main, they have the salutary effect of promoting judicial economy and efficiency. We cannot however, apply a doctrine of "judicial convenience" when the General Assembly has so very clearly provided for a right of private action with the intent that it has priority over other laws. The remedial purposes of the discrimination laws are not served by requiring exhaustion of administrative remedies. We therefore hold that a separated civil service employee who has administrative remedies available to him by way of a civil service appeal is not required to exhaust those remedies as a predicate to filing a private disability discrimination action under R.C. Chapter 4112.99.
 {¶ 66} At the same time it granted summary judgment to the city, the court denied as moot Dworning's motion to compel discovery. Our reversal of the summary judgment necessarily vitiates that ruling.
 {¶ 67} This cause is reversed and remanded for proceedings consistent with this opinion.
It is, therefore, ordered that said appellant recover of said appellees his costs herein taxed.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MICHAEL J. CORRIGAN, JUDGE* CHRISTINE T. McMONAGLE, J., CONCURS
* Sitting by Assignment: Judge Michael J. Corrigan, Retired, of the Eighth District Court of Appeals.
SEAN C. GALLAGHER, P.J., CONCURS IN JUDGMENT ONLY WITH SEPARATE OPINION