[Cite as *Dart v. Bellbrook Property Rev. Comm.*, 2021-Ohio-864.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY**

| | | |
|---|---|---|
| GREG DART | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 2020-CA-28 |
| | : | |
| v. | : | Trial Court Case No. 2019-CV-798 |
| | : | |
| CITY OF BELLBROOK PROPERTY | : | (Civil Appeal from |
| REVIEW COMMISSION | : | Common Pleas Court) |
| | : | |
| Defendant-Appellee | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 19th day of March, 2021.

. . . . . . . . . . .

ADAM JAMES STOUT, Atty. Reg. No. 0080334, 2600 Far Hills Avenue, Suite 315, Dayton, Ohio 45419
      Attorney for Plaintiff-Appellant

STEPHEN M. MCHUGH, Atty. Reg. No. 018788, BENJAMIN A. MAZER, Atty. Reg. No. 0087756 & JASON D. NORWOOD, Atty. Reg. No. 0096306, 33 West First Street, Suite 600, Dayton, Ohio 45402
      Attorneys for Defendant-Appellee

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Greg Dart appeals from the trial court's judgment dismissing his administrative appeal from a decision of the Bellbrook Property Review Commission ("BPRC"). Dart's appeal was filed after a "rehearing" by the BPRC on the issue of whether to refer Dart's property at 7 West Franklin Street for prosecution for property maintenance and zoning code violations; the "rehearing" was held several months after Dart had failed to respond to a notice of those violations. Since Dart failed to exhaust the administrative remedies available to him, we affirm the judgment of the trial court.

{¶ 2} The record reflects that, on May 22, 2019, Bellbrook Planning and Zoning Assistant Jeff Green sent Dart an informal violation letter via certified mail; the letter referenced a conversation between Dart and Green the prior week, listed multiple specific violations, and requested a timeframe within which the exterior property maintenance and zoning issues at Dart's property would be addressed. The property at issue was located in the B-4 Central Business District of Bellbrook.

{¶ 3} On July 2, 2019, Green sent Dart a formal violation letter via certified mail. That letter referenced the May 22, 2019 letter, indicated that Dart had not given the city any timeframe in which work would be completed, and stated that no work addressing the violations had begun. The letter advised Dart to "[a]bate all property maintenance and zoning issues" by July 26, 2019, and it reiterated what corrective actions were needed. The letter further advised Dart that failure to abate the listed property maintenance violations would result in a $250 fine per violation, pursuant to Section 1450.99(b) of the property maintenance code, that failure to abate the zoning violations would result in a $25 fine per day (not to exceed $250) for each zoning violation, pursuant to Section 19.12(3), and that the city reserved the right to place a lien on the property if the fines

were not paid. The following language in the letter was highlighted: "Any person directly affected by the decision of the Code Official or a notice or order issued under this Code shall have the right to appeal to the [BPRC], provided that a written application for appeal is filed within 20 days after the day the decision, notice or order was served." The return receipt reflects that someone other than Dart signed for the letter on July 5, 2019. Dart did not appeal to the BPRC from the formal notice of violations.

{¶ 4} On August 7, 2019, Green sent another correspondence to Dart, which referenced his May 22 and July 2, 2019, letters about property maintenance and zoning violations and the requirement that the property "be brought up to code by no later than" July 26, 2019. Green stated that he had confirmed that 26 of the original 29 violations were still present," and he enclosed a list of the remaining violations and an invoice for $6,750, which was due September 10, 2019. Further, the letter stated that the City had forwarded this case to the BPRC, which would hold a "public hearing" on August 20, 2019 regarding the remaining violations. Green encouraged Dart (or his representative) to attend the public hearing "to speak to the board."

{¶ 5} Dart did not appear at the public hearing. The minutes from the meeting reflect that the BPRC unanimously passed a motion to refer Dart's case for prosecution. At Dart's request, a rehearing was scheduled for October 8, 2019, and later continued to

November 19, 2019.[1]    The public hearing notices for each scheduled hearing listed the address of the property and stated:   "This is a staff request to review the case for prosecution.   The property * * * will be considered due to the property maintenance and zoning issues on site."

{¶ 6} On November 14, 2019, counsel for Dart sent correspondence to Green that stated in part as follows:

> Thank you again for meeting with us today, the following is our initial proposal regarding addressing the alleged violations in the letter dated August 7, 2019.   Many of the repairs are expected to be completed by February 28, 2020 (After further consult with Mr. Dart, most of the items to be completed by November 19, 2019).   However, the major repairs will require approximately two years.   Our plan and our objections are presented in the order that your letter addressed them[.]
>
> * * *
>
> A spread sheet has been attached outlining our timetable for completing this. * * *

On the attached spreadsheet, next to the violations for "Construction Dumpster," "Materials stored outside," "Sidewalks and Driveways," and "Roof" was the word

---

[1] Green's November 14, 2019 Staff Report stated: "9/6/19. Received notification from Mr. Dart's attorney asking for an appeal or rehearing of [B]PRC meeting as Mr. Dart claims the meeting occurred without his knowledge.   An appeal, per the code (1450.16) is not possible as the request to appeal would need to be submitted within 20 days of the order which was 7/2/19.   As a result of this conversation, staff decided to allow a rehearing at the [B]PRC which was set for October 8th."   The report further noted that, as of November 14, 2019, work was occurring on Dart's property and, "[a]s such, other violations may be abated by the time of the hearing."

"DISPUTE."

{¶ 7} At the start of the hearing on November 19, 2019, Bellbrook City Manager Melissa Dodd summarized the BPRC's history with Dart as follows:

MS. DODD: * * *   [O]n August 7th, a letter went out to Mr. Dart regular mail and certified mail * * * advising that there would be a Property Review Commission meeting that was going to happen.   And so it was not signed for until eight days after the Property Review Commission, the certified mail piece was not.

* * *

So once we figured out that there was not a notification made to the property owner, they asked if they could have some more time and be reheard by the Property Review Commission.   And so we agreed to do that.

And so the meeting should have happened in October at that point, but the applicant asked if it could be pushed back a month further so that they could try to get a time line together and so that was also acknowledged and so the meeting was set for today.

And so we did get a time line on Friday from Mr. Dart's attorney and it does outline some of the things that have been addressed and it - - it is contesting a few items which is totally fair and within their - - their right to be able to do so. With * * * a time line that has now been given to the city, * * * this is a huge step forward * * * for the entire case and I think that this really changes the landscape of the conversation now because we've all seen that there's been work done on the building in the last couple of weeks. We now

have a formal time line for consideration and I think that this totally changes the game.

    \* \* \*

    \* \* \* So with that being said, that's \* \* \* the framework from the staff side of this. And I'll give it back to you guys and I know that the property owner is here and we can take it from there.

    \* \* \*

    MR. BURKE: Just a quick question on, like formality. This is considered a rehearing more than an appeal, correct?

    MS. Dodd: Yes. The appeal time frame passed back in July. You have 20 days after you get a formal violation letter to appeal. So that - - that has lapsed. So this is basically a - - a rehearing of the hearing that happened in August. So yes, that's correct.

    CHAIRWOMAN BRINEGAR: It's unusual but we're granting the rehearing. Yes.

{¶ 8} At the hearing, counsel for Dart presented an update on the actions taken at the property, including photos, and he addressed the violations individually. Regarding Violation #1, vegetation overgrowth, he stated that the overgrowth had been removed. Regarding Violation #2, the need to remove the construction dumpster at the rear of the property, counsel stated that the dumpster was necessary for Dart's business and "this isn't like the commercial area \* \* \* of the downtown."

{¶ 9} Regarding Violation #3, the storage of materials on the rear and side of the property, which were to be removed and "placed in an enclosed structure or screened

from public view," counsel for Dart stated that the cited code section applied only to residential areas. As to Violation #4, that portions of the sidewalk were cracked and uneven and needed to be replaced in a safe condition, counsel stated that "the cracks do not look * * * jagged."

{¶ 10} Regarding Violation #5, which required "protective retreatment" of the "roof, wall, windows, garage door frame, wooden shingles, wooden siding, door frame, and loudspeaker," counsel stated that Dart "object[ed] to the revarnish" and that the roof was not leaking. Dart spoke about the historical characteristics of the building and the attendant difficulties and expense of repairs. He stated that the roof consisted of metal, over shingles, over the original wooden shakes. Dart agreed that a reasonable timeline for the roof to be completed was October 2021, and he asked to have the fines that had been assessed waived.

{¶ 11} When asked about his long term plans for the building, Dart responded that he bought the building in 2003 and that he would eventually like "to turn it into a place for community work, possible retail, food and beverage, for something that Bellbrook could appreciate as a legacy that would stay here forever after I'm gone." He stated that, for many years, the property had been used as "a mechanic shop and stain booth for Pella windows and doors and all our construction work and retail business," to sort merchandise, and to "do artwork and all kinds of things," but "we've outgrown it so now it's time to do something with it."

{¶ 12} After a period of public input, BPRC Chairwoman Brinegar stated:

> [W]e've got several different decisions to make, right? I mean * * *
>
> they are questioning some of the violations. * * * So I think it would be helpful

to make a decision about those.

We have a decision about whether to accept this timeline. * * *

* * *

I think - - you know, the reason that this case got sent to prosecution was several fold. I mean, one, there were a lot of violations, but that - - I think it was the lack of cooperation, both over the phone - - and I get it. * * * I mean, poor Dayton. We've * * * had a rough go of it, the spring and summer.

I think it could have been helpful to sort of say, we're overloaded, we're busy or can we get back to you? I mean, there was sort of very - - very little communication. And there was no representative here * * * at the hearing. No time line, which we had requested months ago. And so that was sort of the rationale for why it was sent to prosecution unanimously back on August 20th.

This is a rehearing. It's not an appeal. Right. So we're clear on that. I think if this had been presented at that time I think it would have been a different outcome, right? * * * And, you know, it seemed like unfortunately things - - the ball didn't get rolling until there was a heavier hand.

{¶ 13} Regarding the dumpster on the property, Brinegar stated that there were ""different ways * * * [to] look at that," and two codes seemed relevant. Green then elaborated:

Yes. 1450.31 N and 1450.31 P, the first one is in specifically

regards to construction equipment. So - - and staff's opinion is it's construction equipment and per the code, unless construction equipment is actively being used for construction purposes on the property, upon which the equipment is located, all construction equipment must not remain outside more than 15 days.

If you ask me, the intent of the code is essentially to say, hey, you can actively renovate a property and what have you and utilize a larger dumpster for that purpose.

* * *

The second one is garbage and rubbish container which basically says every establishment that produces garbage, waste, what have you, shall provide at all times a leak proof approved container provided with a cover closely fitting cover for the storage of materials.

Again, that kind of plays into the top one where there needs to be a dumpster there that can physically seal the contents and get out of the elements. So you kind of have the rundown there and that's basically how I believe it to be a violation. * * *

{¶ 14} Another person observed, "this is almost an ambiguous ruling on the dumpster. It's not really totally clear in my mind what the zoning - - the zoning says right now. Is it truly in violation right now? I don't know."

{¶ 15} After further discussion, Brinegar stated:

I mean, I'm not concerned about that one right now. The * * * materials stored outside. This one is a little vague as well, right? You

know, I think * * * it applies more for the residential codes, which again, the central business district is kind of a hybrid, right? We have commercial and we have residential. You know, I can say personally I would not want to look at some of the stuff that is still out there, right? But its - - from a code point of view, it's not as clear.

{¶ 16} As to the roof and Dart's assertion that the roof was not leaking or corroded to the point of replacement, Brinegar noted that Dart was not cited for being in violation for leakage or corrosion; rather, the roof violation was based on the appearance of rust on the roof, with the "request [being] to sort of remove the rust and to add a protectant to prevent it from further rusting." She stated that she understood the need for some time to complete the work, but that Dart's "dispute" of the violation was "null," in her view, because the violation was not based on leaking.

{¶ 17} After the above discussion, Brinegar made a motion to "retain" Violation #2 and the portion of Violation #5 pertaining to the roof. She moved to "remove" Violation #4 from the list of violations. A motion was made by another member that, if the conditions were met by February 28, 2020, the fines would be waived, and if not, then the fines would be retained if the conditions still existed after a staff inspection, which would happen by March 9, 2020. A motion was also made for Dart to provide a detailed schedule for renovations by March 9, 2020. Finally, Brinegar moved that Violations #2 and #3 have a completion date of February 28, 2020. The motions passed.

{¶ 18} Regarding these proceedings, a November 20, 2019 memorandum from Green to Dart stated:

After public and board discussion of the case, the [BPRC] made four (4)

motions listed below * * *:

● Motion 1:   Remove violation #4 Sidewalks and Walkways from [BPRC] Case 19-02.

● Motion 2:   So long as the items with a completion date of February 28, 2020 (violations 5d, 5f, 6, 9c, 10, 11, 12a, 12b, 13, 14, 16) are completed, all the fines will be waived.   The fines are retained if the violations still exist following a staff inspection by March 9, 2020.

● Motion 3:   A detailed schedule for the renovation of 7 W[.] Franklin Street, including the items in yellow (violations 5a, 5b, 5e, and 8), must be supplied to the city by March 9, 2020.

● Motion 4:   Violations #2 Construction Equipment and #3 Outside Storage must be abated by February 28, 2020.

* * *

You have the right to appeal the decision of the [BPRC] in the same manner as appeals are taken from actions of the Board of Zoning Appeals (Existing Structures Code, Chapter 1450, Sec. 1450.03(c), BPRC, Appeal of BPRC Action).   The Zoning Ordinance states ". . . that recourse from the decisions of the Board (BZA) shall be made within ten (10 days) of the Board's written decision."   Article #20, Sec. 20.11 Administration, Duties of Zoning Inspector, Board of Zoning Appeals, Legislative Authority and Courts on Matters of Appeal).

{¶ 19} On December 6, 2019, Dart filed a notice of appeal from the BPRC's decision in the trial court.   In his brief, Dart asserted that, after the Memorial Day

tornadoes in 2019, his general contracting company, G.L. Dart General Contracting, had "performed extensive emergency repairs in the Miami Valley," and that he subsequently began to address the many violations at his property. Dart argued that the decision of the BPRC should be reversed or modified.

{¶ 20} Specifically, in his first assignment of error, Dart asserted that the BPRC and the city incorrectly applied Bellbrook Mun. Code 1450.31(j), which Dart asserted did "not apply to commercial uses within the Central Business District (B-4), a multi-use zoned area." In his second assignment of error, Dart argued that the BPRC erroneously applied Bellbrook Mun. Code 1450.31(m,p) to the use of a construction dumpster on the property. In his third assignment of error, Dart argued that BPRC "failed to definitively address items pertaining to the remediation of Violations 1, 7, 8c & 15." Finally, in his fourth assignment of error, Dart argued that the BPRC exceeded its authority "by only requiring a detailed schedule of the renovation and not an alternative option to remediate defects."

{¶ 21} On May 8, 2020, the City responded, asserting that Dart had misunderstood or misinterpreted the scope of the November 2019 hearing, "despite being told repeatedly" that that hearing "was not an appeal of the merits of the Notice Violations." According to the City, the November 2019 hearing was simply to determine whether Dart's violations should be referred to the prosecutor's office; it decided that the violations should not be referred to the prosecutor and allowed him additional time to rectify the violations before taking that step.

{¶ 22} The City asserted that Dart could not challenge the merits of the specific property maintenance and zoning violations identified by the City on appeal to the trial

court because he had failed to exhaust his administrative remedies following the July 2, 2019 Notice of Violations. Although the City asserted that Sections 1450.31(j), (m), and (p) did apply to Dart's property, it focused on the fact that that the merits of the alleged violations were not the subject of the hearing. The City also argued that Dart essentially admitted the violations when he failed to timely appeal and that, at the November hearing, the BPRC was "simply reviewing the status of the property," including the corrective measures that had been taken and the projected time frame to complete the additional necessary renovations, "so it could determine if a referral to the local prosecutor was appropriate."

{¶ 23} After an extension, Dart's reply was filed on May 22, 2020. Dart argued that, contrary to the City's assertions, the BPRC did in fact rule on the merits of the violations themselves at the hearing, as if it were an appeal. Dart also pointed out that the BPRC itself had been "not sure initially of the nature of the hearing, and proceeded as if it was an appeal, in spite of its discussion with the City Manager."

{¶ 24} Dart asserted that the August 7, 2020 letter he received from Green did not indicate that it was "only limited to the referral for criminal prosecution." He also pointed out that he was "not the listed signatory for receipt" of the July letter related to violations. Dart asserted that he was not served with notice of the August 20 hearing date until August 28, 2020. He also asserted that, at that time, he "was working nearly 24/7 on remediation activities" due to the Memorial Day tornadoes, and "the July hearing date [was] a fundamental violation of [his] constitutional rights" because he was not present.

{¶ 25} On June 12, 2020, the trial court dismissed Dart's appeal and affirmed the decision of the BPRC. The trial court determined in part as follows:

The evidence before this Court establishes that in a letter dated July 2, 2019, Green advised Dart that his property was in violation of multiple sections of the Bellbrook Property Maintenance and Zoning Codes and gave Dart until July 26, 2019 to abate the 29 violations identified in the letter. Dart was advised of the potential penalties for the failure to abate the violations and was advised of his right to appeal to the BPRC. The July 2, 2019 letter was sent via certified mail and was delivered on July 8, 2019. Dart had 20 days from the date of service to file a notice of appeal with the [B]PRC, which put the notice of appeal due on or before July 29, 2019. Dart did not appeal the violations to the [B]PRC despite having the ability to do so.

Dart argues that the November 19, 2019 rehearing regarding referring the case for prosecution proceeded "as if it was an appeal" because the BPRC ruled on the merits of the violations themselves. The fact that the BPRC agreed to rehear the issue of referring Dart's violations for prosecution does not mean that he can now appeal the substance of the violations to this Court without first having filed a timely appeal of the violations to the BPRC.

Given the evidence before this Court, it is clear that Dart has failed to exhaust the administrative remedies available to him. There is neither argument nor evidence that either of the exceptions to the doctrine of exhaustion are applicable here.

(Footnote omitted.)

{¶ 26} Dart now appeals to this court, raising four assignments of error.   The first assignment of error set forth in his brief is:[2]

THE TRIAL COURT ERRONEOUSLY RULED THE APPELLANT FAILED TO EXHAUST ADMINISTRATIVE REMEDIES WHEN THE PROPERTY REVIEW COMMISSION NOVEMBER 19, 2020 REHEARING FUNCTIONED AS AN APPEAL OF THE CITY'S CITATION OF APPELLANT'S PROPERTY, BECAUSE THE [B]PRC MADE ITS DECISION BASED ON WHETHER THE APPELLANT'S PROPERTY VIOLATED THE BELLBROOK MUNICIPAL CODE.

{¶ 27} Dart asserts that the BPRC considered evidence and legal arguments regarding the alleged violations during the November 2019 "rehearing" and that it based its decisions to withdraw violations or demand they be abated by a certain time on those arguments.   Dart also asserts that, if no administrative remedy is available which can provide the relief sought, or if resorting to an administrative remedy would be wholly futile, exhaustion of such a remedy is not required.   He argues that "exhaustion of remedies is unnecessary when the available remedy is onerous or unusually expensive."

{¶ 28} According to Dart, his administrative remedies were "exhausted or not applicable," because the BPRC withdrew Violation #4 and upheld Violations #2 and #3 after the hearing at which it reviewed his evidence and arguments.   As to Violation #4, Dart argues that the BPRC "based its decision on the vagueness of the ordinance, which had also been amended."   He contends that the BPRC upheld Violation #3 based "on its

---

[2] Dart's first assignment of error is stated somewhat differently in the table of contents and in the body of his brief.   We set forth the version from the body of his brief.

construction of the statute and what the language of [the] statute required" as to fencing to conceal the materials. Regarding Violation #2, Dart asserts that the BPRC "analyzed the situation as to whether the dumpster on the property was synonymous with industrial use" and attempted to apply Bellbrook Mun. Code 1450.31(n, p) in attempting to determin[e] whether the condition of the property was or was not in violation of the [statute]." Dart asserts that the BPRC's "rehearing" clearly addressed whether the property's condition violated any of the Bellbrook Municipal Codes and that the City's defense of failure to exhaust administrative remedies "does not apply, because the 'rehearing' ruled on [Dart's] objections to the City's Application of the Bellbrook Municipal Code."

{¶ 29} The City responds that the trial court properly dismissed Dart's R.C. 2506 appeal, because he failed to appeal from the July 2, 2019 notice of violations. According to the City, there are two exceptions to the general rule that exhaustion of administrative remedies is required before seeking judicial review, and neither of those exceptions applied in this case. Moreover, the administrative remedy could have provided Dart with the relief he sought, and that remedy was not "onerous or unusually expensive"; Dart "simply chose not to" pursue that remedy.

{¶ 30} The City further asserts that there were "two distinct, key events" that occurred at the administrative level: the issuance of the notice of violations to Dart, and the Code Official's request to refer the case to the prosecutor's office for criminal prosecution. The City argues that, if Dart had timely appealed the notice of violations, he would have been afforded a hearing before the BPRC, which would have reviewed the merits of the violations and then reversed, upheld, or modified them. At that point, if Dart

had disagreed with the BPRC's decision, he could have filed an R.C. 2506 appeal with the common pleas court.

{¶ 31} The City asserts that the BPRC is also required to review violation orders before a case can be referred to the prosecutor's office for criminal prosecution, which was "precisely what happened at the November 19, 2019 rehearing." According to the City, after reviewing the Code Official's request to send Dart's case to the prosecutor's office for criminal prosecution, "the BPRC issued a written decision that it felt was appropriate based on the information presented at the November 19th hearing."

{¶ 32} The City notes that Dart claims (in his fourth assignment of error, below) that the BPRC erred when it did not address other violations in its decision, but the City asserts that the BPRC had no obligation to do so. "The only question before the BPRC at the time of the November hearing was whether Mr. Dart's case should be referred to the prosecutor's office," and its decision did not "uphold" certain violations and "affirm" others, because such actions were outside the scope of that hearing. Rather, the City asserts that, based on the information Dart provided about the status of his property, the BPRC reviewed the status of the violations before making a determination about a referral for prosecution. According to the City, although "Dart may have felt like he was presenting his case 'as if it were an appeal,' but that [did] not make it so."

{¶ 33} Finally, the City argues that the BPRC "lacked jurisdiction" to entertain an appeal of Dart's violations, because Dart "waived his right to challenge the actual Violations for which he was cited" when he did not appeal from the July 2, 2019 notice of violations.

{¶ 34} We agree with the City. As noted by this Court:

An appellate court approaches appeals from R.C. Chapter 2506 decisions concerning administrative agency determinations using two distinct standards of review. On questions of fact, our review is limited to whether the trial court abused its discretion. *Ohio Dep't of Commerce, Division of Real Estate v. DePugh* (1998), 129 Ohio App.3d 255, 261, 717 N.E.2d 763. An abuse of discretion occurs when the common pleas court's decision is unreasonable, arbitrary, or unconscionable. *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748. However, regarding questions of law, our review is *de novo. DePugh, supra.*

* * *

"Exhaustion of administrative remedies," * * * is a doctrine of judicial abstention. "Prior to seeking court action in an administrative matter, the party must exhaust the available avenues of administrative relief through administrative appeal." *Noernberg v. Brook Park* (1980), 63 Ohio St.2d 26, 29, 406 N.E.2d 1095. In Ohio, the doctrine is a court-made rule of judicial economy. *Nemazee v. Mt. Sinai Medical Center* (1990), 56 Ohio St.3d 109, 111, 564 N.E.2d 477. "The purpose of the doctrine '* * * is to permit an administrative agency to apply its special expertise * * * in developing a factual record without premature judicial intervention.' " *Id.* (citing *Southern Ohio Coal Co. v. Donovan* (C.A.6, 1985), 774 F.2d 693, 702). * * *

*Lamar Outdoor Advertising v. City of Dayton Bd. of Zoning Appeals*, 2d Dist. Montgomery No. 18902, 2002 WL 1349600, *2, 3 (June 21, 2002).

{¶ 35} As noted by the Ohio Supreme Court:

Two exceptions to the general rule exist. First, if there is no administrative remedy available which can provide the relief sought, * * * or if resort to administrative remedies would be wholly futile, exhaustion is not required. *Glover v. St. Louis-San Francisco Ry. Co.* (1969), 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519, [*MacDonald, Sommer & Frates* v.] *County of Yolo,* [477 U.S. 340, 106 S.Ct. 2561, 91 L.Ed.2d 285], fn. 8, (White, J., dissenting). Second, exhaustion of remedies is unnecessary when the available remedy is onerous or unusually expensive. *Gates Mills Investment Co. v. Pepper Pike* (1975), 44 Ohio St.2d 73, 73 O.O.2d 321, 337 N.E.2d 777* * *[.]

*Karches v. Cincinnati,* 38 Ohio St.3d 12, 17, 526 N.E.2d 1350 (1988).

{¶ 36} Section 1450.03 of the Bellbrook Property Maintenance Code governs the BPRC and Section 1450.03(b) governs the BPRC's duties. Section 1450.03(b)(2) states that the BPRC shall "[r]eview violation orders. When the Code Official requests prosecution of a violation order, the BPRC shall review that violation order. * * *." Section 1450.03(b)(3) provides that the BPRC "shall serve as the Code Appeals Board."

{¶ 37} Section 1450.11 governs notices and orders, and subsection (c)(5) of the section provides that notices must "[i]nform the property owner of the right to appeal to the [BPRC]. If a property owner desires such an appeal, a notice of appeal must be filed with the Code Official within twenty (20) days from the receipt of the notice." Section 1450.16 governs the means of appeal and provides: "Any person directly affected by a decision of the Code Official or a notice or order issued under this Code shall have the right to appeal to the [BPRC], provided that a written application for appeal is filed within

20 days after the day the decision, notice or order was served. * * *."

**{¶ 38}** As noted above, the highlighted portion of the July 2, 2019 formal notice of property maintenance and zoning violations advised Dart, verbatim, of the Section 1450.16 right to and procedure for an appeal, and the return receipt of the certified mail reflected that it was signed for on July 8, 2019. The notice of public hearing issued before the November hearing clearly stated: "PRC19-02 - This is a staff request *to review the case for prosecution,*" and Dart was advised at the proceeding that it was not an appeal from the notice of violations, since his time for doing so had passed. The BPRC considered Dart's arguments in an effort to determine if prosecution was appropriate for the issues at the property and, as the trial court noted, the fact that the BPRC agreed to rehear that issue did not mean that Dart could untimely appeal from the formal notice of violations. Dart failed to timely appeal from the July 2, 2019 notice, and the trial court correctly dismissed his appeal due to his failure to exhaust his administrative remedies. Finally, as the trial court noted, there was no evidence that either exception to the requirement to exhaust administrative remedies applied.

**{¶ 39}** Dart's first assignment of error is overruled.

**{¶ 40}** Dart's remaining assignments of error are as follows:

THE [BPRC] IN MOTION #4 ERRONEOUSLY APPLIES BELLBROOK MUN. CODE § 1450.31(J) TO A NON-COMMERCIAL PROPERTY IN THE CITY'S CENTRAL BUSINESS DISTRICT.

THE [BPRC] IN MOTION #3 ERRONEOUSLY APPLIES BELLBROOK MUN. CODE 1450.31(m,p) TO THE USE OF A CONSTRUCTION DUMPSTER ASSOCIATED WITH THE PLAINTIFF'S

CONSTRUCTION BUSINESS AND WHEN THE PLAINTIFF IS CONDUCTING REPAIRS ON THE PROPERTY.

THE [BPRC] IN MOTION #2 ERRONEOUSLY OMITS ANY RESOLUTION FOR VIOLATIONS 1, 7, 8c & 15 IN ITS RECOMMENDATION LETTER ON NOVEMBER 20, 2019.

{¶ 41} Having determined that Dart failed to exhaust his administrative remedies, analysis of these assignments of error is not required, and they are overruled.

{¶ 42} The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, P. J. and HALL, J., concur.

Copies sent to:

Adam James Stout
Stephen M. McHugh
Benjamin A. Mazer
Jason D. Norwood
Successor of Hon. Stephen Wolaver